## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**KASSEM M. DAKHLALLAH, TARIK TURFE,** and **ABEDELLATIF AOUN**

        Plaintiffs,

v.

**NICHOLAS "NICK" CHAN, MAXIM GERRNICK, JONAS SNELLINCX, MICHAEL GU, ELVIN CHEUNG, ALBERT CHEN,** and **REFINABLE**

        Defendant.

Case No. 2:22-cv-11522
Hon.

_____/

CHAMI LAW, PLLC
Tarek N. Chami, (P76407)
22000 Michigan Ave., Suite 200
Dearborn, MI 48124
T: (313) 444-5029
E: tarek@pricelawgroup.com

David A. Chami, AZ 027585
PRICE LAW GROUP, APC
8245 N 85th Way
Scottsdale, AZ 85258
T: (818) 600-5515
E: david@pricelawgroup.com
*Attorney for Plaintiffs*
*Kassem M. Dakhlallah, Tarik Tufre, and*
*Abedellatif Aoun*

_____/

        There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the complaint.

## COMPLAINT

NOW COME Plaintiffs Kassem M. Dakhlallah, Tarik Turfe, and Abedellatif Aoun by and through their attorneys, HAMMOUD, DAKHLALLAH & ASSOCIATES, PLLC and for their Complaint against the Defendants, hereby states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.  Plaintiff Kassem M. Dakhlallah is an individual who resides in Canton, Michigan.

2.  Plaintiff Tarik Turfe is an individual who resides in Dearborn Heights, Michigan.

3.  Plaintiff Abedellatif Aoun is an individual who resides in Livonia, Michigan

4.  Defendant Nicholas "Nick" Chan is an individual who holds himself out to the public to be a member of Refinable's founding team. Upon information and belief, Nick Chan resides in Hong Kong, China.

5.  Defendant Maxim Geerinck is an individual who holds himself out to the public to be a member of Refinable's founding team. Upon information and belief, Maxim Geerinck resides in Antwerp, Belgium.

6.  Defendant Jonas Snellinckx is an individual who holds himself out to the public to be a member of Refinable's founding team. Upon information and belief, Jonas Snellinckx resides in Ghent, Belgium.

7.  Defendant Nicholas Au is an individual who holds himself out to the public to be the Director of Refinable. Upon information and belief, Nicholas Au resides in Hong Kong, China.

8.  Defendant Albert Chan is an individual who holds himself out to the public to be the as one of Refinable's advisors. Upon information and belief, Albert Chan resides in Hong Kong, China.

9.  Defendant Benjamin Tse is an individual who holds himself out to the public to be a member of Refinable's advising team. Upon information and belief, Benjamin Tse resides in Pasadena, California.

10. Defendant Michael Gu is an individual who holds himself out to the public as one of Refinable's advisors. Upon information and belief, Michael Gu resides in Hong Kong, China.

11. Defendant Elvin Cheung holds himself out to the public as one of Refinable's advisors. Upon information and belief, Hong Kong, China.

12. Upon information and belief, Defendant Refinable is a Corporation incorporated in Hong Kong, China.

13. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

14. Defendants, directly and indirectly, have made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

15. Venue lies in this District under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Defendants solicited potential investors in the Eastern District of Michigan, and undertook acts, practices, transactions, and courses of business alleged in this Complaint within this District.

## GENERAL ALLEGATIONS

16. This case involves fraudulent representations for the sale of FINE Token by Refinable. Refinable, its founding team, Nick Chan, Maxim Geerinck, and Jonas Snellinckx, its advisors, Michael Gu, Elvin Cheung, and Albert Chen presented a slide deck to potential investors, prior

to FINE Token's public launch. In its presentation, all Defendants, promised its investors an exclusive launch price of $.033 (USD) / 1 FINE Token. *See* **Exhibit A – Refinable Slide Deck.**

17. FINE Token was launched on April 27, 2021, at 2:00 PM UTC (10:00 AM EST) by Refinable. As instructed by Defendants, on April 27, 2021, on 10:00AM EST Plaintiffs purchased FINE Token. Plaintiffs did not receive a single token at the promised launch price of $.033 (USD)/ 1 Token. Within seconds of its launch, the price of FINE Token rose to above 25,000% of the ICO price of $.033 (USD)/ 1 FINE. FINE Token's price skyrocketed to over $9.00 (USD).

18. Defendants collaborated to intentionally mislead its investors to solicit the sale FINE Token. Defendants manipulated its unsuspecting investors to believe that FINE Token was a high reward, low risk investment opportunity.

19. Defendants never intended to sell FINE Token at the ICO price.

20. Defendants directly have engaged in acts, practices, and courses of business that violate Sections 15 U.S.C. §§ 78i(a)(1)-(6), 77q(a), 78j(b), and 17 C.F.R. § 240.10b-5 of the Securities Exchange Act of 1934.

21. Defendants' representations to Plaintiffs were false. Plaintiffs never received a single FINE Token at the promised ICO price of $0.33 (USD)/ 1 Token. Instead, Defendants intentionally delayed transactions that, in the event that the transactions eventually processed, the same processed at exorbitant price points. As a result, the purchasers of FINE Token received varying amounts of FINE Tokens.

22. Defendants are personally liable for the damages sustained by FINE Token investors. By offering FINE Token at a deflated price, these Defendants directly manipulated their investors. Defendants knew that FINE Token was not going to available for purchase at the ICO.

Defendants directly engaged in price manipulation in order to profit at the expense of their investors.

23. Defendants misled its investors to solicit the sales of FINE Token by presenting false information to its investors.

24. Defendants are personally liable for creating a "pump and dump" scheme. FINE Token is a classic "rug pull" cryptocurrency scheme.

25. Almost immediately following the ICO, the FINE Token price decreased from its astronomical high price of over $9.00/coin to significantly less than $1.00/coin.

26. Defendants Nick Chan, Maxim Geerinck, Jonas Snellinckx, Michael Gu, Elvin Cheung, and Albert Chen directly solicited the sale of FINE Token to investors.

27. Defendants Nick Chan, Maxim Geerinck, Jonas Snellinckx, Michael Gu, Elvin Cheung, and Albert Chen directly and intentionally, misled its investors in order to solicit the sale of FINE Token.

28. Investors were manipulated to believe that on April 27, 2021, at 10:00AM EST, FINE Token will be available at the promised ICO of $0.33(USD) / 1 Token.

29. None of the investors, including Plaintiffs were able to purchase FINE Token at the advertised ICO.

## COUNT I — VIOLATION OF SECURITIES ACT 15 U.S.C. § 77q(a)

30. Plaintiffs hereby re-allege and incorporate all previous paragraphs of this Complaint as if fully restated herein.

31. Defendants, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, (i) knowingly or recklessly have employed one or more devices, schemes or

artifices to defraud, (ii) knowingly, recklessly, or negligently have obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) knowingly, recklessly, or negligently have engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchasers.

32. By reason of the foregoing, Defendants, directly or indirectly, singly or in concert, have violated and, unless enjoined, will likely again violate the Securities Act [15 U.S.C. § 77q(a)].

### COUNT II — VIOLATION OF EXCHANGE ACT 15 U.S.C. § 78i(a)(1)–(6)

33. Plaintiffs hereby re-allege and incorporate all previous paragraphs of this Complaint as if fully restated herein.

34. Defendants, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, (i) knowingly or recklessly have employed one or more devices, schemes or artifices to defraud, (ii) knowingly, recklessly, or negligently have obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) knowingly, recklessly, or negligently have engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchasers.

35. By reason of the foregoing, Defendants, directly or indirectly, singly or in concert, have violated and, unless enjoined, will likely again violate the Exchange Act [15 U.S.C. § 78i(a)(1)–(6)].

## COUNT III — VIOLATION OF EXCHANGE ACT 15 U.S.C. § 78j(b)

36. Plaintiffs hereby re-allege and incorporate all previous paragraphs of this Complaint as if fully restated herein.

37. Defendants, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly have (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

38. By reason of the foregoing, Defendants, directly or indirectly, singly or in concert, have violated and, unless enjoined, will likely again violate the Exchange Act [15 U.S.C. § 78j(b)].

## COUNT IV — VIOLATIONS OF 18 U.S.C. § 1962 RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (R.I.C.O.) PROHIBITED ACTIVITIES

39. Plaintiffs hereby re-allege and incorporate all previous paragraphs of this Complaint as if fully restated herein.

40. At all relevant times hereto, each Plaintiff is a "person" pursuant to 18 U.S.C. § 1961(3).

41. At all relevant times hereto, each Defendant is a "person" pursuant to 18 § U.S.C. § 1961(3).

42. At all relevant times hereto, Defendants, individually and in concert with one another, formed an "enterprise".

43. At all relevant times hereto, Defendants' "enterprise" was engaged in activities in interstate commerce. This "enterprise" has a common or shared purpose among individuals operating,

managing, and associated with them. It has an on-going organization whose members function as a continuing unit, and some continuity of structure or purpose. It has an ascertainable structure distinct from that inherent in the conduct of the pattern of racketeering activity, as the Defendants are individuals and entities that engage in both lawful and unlawful activities.

44. Defendants conspired among themselves within the meaning of 18 § U.S.C. 1962(d) to violate 18 U.S.C. § 1962(a).

45. Specifically, Defendants conspired among themselves to fraudulently induce Plaintiffs into purchasing the securities (i.e., FINE token).

46. Defendants further conspired among themselves to fraudulently induce Plaintiffs to purchase FINE tokens. The slide deck and white paper were used by the Defendants and their "enterprise" to disguise their scam as a seemingly legitimate business opportunity.

47. Defendants further conspired among themselves that monies paid by Plaintiffs pursuant to their respective purchases of FINE token would be received by Defendants and distributed amongst the "enterprise".

48. Such monies would be derived, directly or indirectly, from a pattern of activity unlawful under 18 U.S.C. § 1961 et. al., in which Defendants participated in as an "enterprise" as stated above.

49. Defendants committed acts of conversion, misappropriation of property, embezzlement, fraud, and fraudulent misrepresentation, among other acts.

50. As a result, Plaintiffs have suffered damages.

## COUNT V — FRAUDULENT MISREPRESENTATION

51. Plaintiffs hereby re-allege and incorporate all previous paragraphs of this Complaint as if fully restated herein.

52. To state a claim for fraudulent misrepresentation, the Plaintiff must prove: 1) the defendant made a material representation; 2) it was false; 3) the defendant either knew it was false or made it recklessly without knowledge of its truth; 4) the representation was made with the intent that the plaintiff would act upon it; and 5) the plaintiff did act, which caused the plaintiff to suffer damages. *Dugan v Vlcko*, 307 F. Supp. 3d 684, 696 (E.D. Mich., 2018)

53. Defendants made a material representation to Plaintiffs that FINE token would be available for purchase at an exclusive launch price of $.033 (USD) / 1 FINE Token.

54. This material representation was false.

55. Defendants either knew that this representation was false or made it recklessly without knowledge of its truth.

56. Defendants made this representation with the intent that Plaintiffs would rely upon it and assent to the purchase.

57. Plaintiffs did, in fact, act in reliance upon the Defendant's misrepresentation.

58. Plaintiffs, as a result, suffered damages.

## COUNT VI — INNOCENT MISREPRESENTATION

59. Plaintiffs hereby re-allege and incorporate all previous paragraphs of this Complaint as if fully restated herein.

60. The elements of innocent misrepresentation are: (1) a representation in a transaction between two parties; (2) that is false; (3) that actually deceives the other party; (4) that the other party relied on; (5) that the other party suffered damage from; and (6) the party making the misrepresentation benefited from it. *Dugan v Vlcko*, 307 F Supp 3d 684, 700 (ED Mich, 2018).

61. In the context of plaintiff's cryptocurrency transaction, Defendants falsely represented to Plaintiff and other FINE token purchasers that the cryptocurrency would be available for purchase at an exclusive launch price of $.033 (USD) / 1 FINE Token.

62. Plaintiffs were deceived by this representation by the Defendants.

63. Plaintiffs relied upon this representation by the Defendants.

64. Plaintiffs suffered damages as a result.

65. Defendants benefitted from their misrepresentation to Plaintiffs.

## COUNT VII — NEGLIGENT MISREPRESENTATION

66. Plaintiffs hereby re-allege and incorporate all previous paragraphs of this Complaint as if fully restated herein.

67. "A claim for negligent misrepresentation requires plaintiff to prove that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Alfieri v Bertorelli*, 295 Mich App 189, 194; 813 NW2d 772, 775 (2012)

68. Defendants had a duty to disclose correct information regarding a securities public offering held out to the general public.

69. Defendants made a false representation to Plaintiffs that FINE token would be available for purchase at an exclusive launch price of $.033 (USD) / 1 FINE Token.

70. The information supplied in the representation was actually known by the Defendants to be desired for a serious purpose (i.e., investing) and was made without reasonable care or recklessly without knowledge of its truth.

71. Plaintiffs did intend to rely and act upon it.

72. Plaintiffs did, in fact, rely and act upon the false representation by purchasing FINE tokens.

73. As a result, Plaintiffs suffered damages.

## COUNT VIII — SILENT FRAUD

74. Plaintiffs hereby re-allege and incorporate all previous paragraphs of this Complaint as if fully restated herein.

75. "Silent fraud is essentially the same as fraudulent misrepresentation except that it is based on a defendant suppressing a material fact that he or she was legally obligated to disclose, rather than making an affirmative misrepresentation." *Dugan v Vlcko*, 307 F Supp 3d 684, 699 (ED Mich, 2018). To prove silent fraud therefore Plaintiff must show Defendant "suppressed the truth with intent to defraud" and that Defendant had a legal or equitable duty of disclosure." *Id.*

76. Defendants suppressed the truth as alleged in this Complaint by failing to disclose to Plaintiffs and other similarly situated purchasers of FINE token that they did not intend to provide FINE token at the promised initial coin offering (ICO) price of $0.33 (USD)/ 1 Token.

77. Defendants had a legal obligation to disclose their intention not to offer FINE token at the advertised and promised initial coin offering (ICO) price of $0.33 (USD)/ 1 Token.

78. As a result of Defendants' actions and omissions, Plaintiff suffered damages.

## COUNT IX — COMMON LAW CONVERSION

79. Plaintiffs hereby re-allege and incorporate all previous paragraphs of this Complaint as if fully restated herein.

80. A conversion is "any distinct act of dominion wrongfully exerted over another's personal property." *Friedman v Freidberg Law Corp*, 44 F Supp 2d 902, 909 (ED Mich, 1999).

81. "The elements of a conversion cause of action are: (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." ATD Corp v DaimlerChrysler Corp, 261 F Supp 2d 887, 897–98 (ED Mich, 2003).

82. Plaintiffs have a possessory right in their initial capital investment.

83. Alternatively, Plaintiffs have a possessory interest in the outstanding amount of FINE token they were supposed to receive at the promised exchange rate of $0.33 (USD)/ 1 FINE Token. In other words, the difference between the FINE token actually obtained during the ICO and the amount they should have received at the promised exchange rate of $0.33 (USD)/ 1 FINE Token.

84. As established above, Plaintiffs never received a single FINE Token at the promised ICO price of $0.33 (USD)/ 1 Token.

85. Defendants wrongfully exerted dominion inconsistent with Plaintiffs' rights therein by intentionally delaying ICO transactions, leading to Plaintiffs' transactions be executed at inflated price points.

86. Defendant's conduct as described in this Complaint constitutes a wrongful conversion of Plaintiff's property in violation of common law.

87. As a result, all purchasers of FINE Token, including Plaintiffs, received varying amounts of FINE Tokens and accordingly suffered damages.

## COUNT X — STATUTORY LAW CONVERSION

88. Plaintiffs hereby re-allege and incorporate all previous paragraphs of this Complaint as if fully restated herein.

89. Defendants' actions described in the Complaint constitutes a wrongful conversion and

embezzlement of Plaintiff's property in violation of MCL 600.2919a.

90. As set forth herein, Defendants wrongfully took control of and exerted dominion over specific, identifiable property by means of fraud.

91. Defendants converted Plaintiff's money for their own use.

92. Pursuant to MCL 600.2919a, Plaintiff is entitled to recover three times the amount of damages sustained, plus costs and reasonable attorney fees.

## COUNT XI — EMBEZZLEMENT

93. Plaintiff hereby re-alleges and incorporates all previous paragraphs of this Complaint as if fully restated herein.

94. Defendants have wrongfully exerted dominion over, converted, and/or embezzled property belonging, in whole or in part, to Plaintiff with the intent of taking and controlling the same to the exclusion of Plaintiff under common law and MCL § 600.2919a.

95. As a direct and proximate result of Defendants' embezzlement, Plaintiff has suffered substantial damages, including, without limitation, treble damages and attorney fees under MCL 600.2919a.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter Judgment for Plaintiffs and against Defendants in an amount greater than $75,000.00. Plaintiffs further request an award of all costs and attorneys' fees so wrongfully incurred in having to bring this lawsuit.

Respectfully submitted,

CHAMI LAW, PLLC

Dated: July 6, 2022

*/s/ Tarek N. Chami*
Tarek N. Chami, (P76407)
22000 Michigan Ave., Suite 200
Dearborn, MI 48124
T: (313) 444-5029
E: tarek@pricelawgroup.com

David A. Chami, AZ 027585
PRICE LAW GROUP, APC
8245 N 85th Way
Scottsdale, AZ 85258
T: (818) 600-5515
E: david@pricelawgroup.com
*Attorney for Plaintiffs*
*Kassem M. Dakhlallah, Tarik Tufre, and*
*Abedellatif Aoun*